SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**JEFFREY S. SWEET, OSB #994183**
Assistant United States Attorney
jeff.sweet@usdoj.gov
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
Telephone: (541) 465-6771
Attorneys for the United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:25-CR-000367-001-MTK** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CELESTINO JOSE GONZALEZ,** | |
| **Defendant.** | |

For several months, defendant Celestino Jose Gonzalez distributed fentanyl in Douglas County, Oregon. He sold fentanyl to an undercover detective seven different times; each sale was approximately two or three ounces, and the combined sale price exceeded $10,000. Then, concerned about being caught, Mr. Jose Gonzalez offered to pay another person to deliver multiple ounces of fentanyl in his stead. The other person did, and was arrested along with Mr. Jose Gonzalez.

Given his repeated fentanyl distribution and decision to involve another person, the government recommends a sentence of 46 months in prison.

**Government's Sentencing Memorandum**                                    **Page 1**

**Factual Background**

In February 2025, Douglas Interagency Narcotics Team (DINT) detectives arrested a person with fentanyl; they agreed to cooperate and provided information about their source of supply. The confidential source (CS) explained they had been ordering drugs from a person in Mexico and the drugs were delivered by a local courier, later identified as Mr. Jose Gonzalez. The CS then made three controlled purchases of fentanyl over a ten-day period; Mr. Jose Gonzlez delivered the fentanyl on each occasion.

At the end of February, the CS communicated with the source of supply who agreed to start selling fentanyl to the CS's friend—a DINT detective. The detective began communicating with the source of supply in early March 2025, and they discussed logistics and fentanyl prices. The source of supply explained that he would send a runner to deliver the fentanyl to the undercover detective.

Seven controlled purchases of fentanyl followed, as DINT and the DEA worked to investigate the source of supply. Mr. Jose Gonzalez delivered the drugs each time. The transaction date and approximate weights and prices follow:

| March 3, 2025 | Two ounces | $1,800 |
| March 10, 2025 | Three ounces | $2,400 |
| March 18, 2025 | Two ounces | $2,000 |
| March 27, 2025 | Two ounces | $1,800 |
| April 2, 2025 | Two ounces | $2,100 |
| April 15, 2025 | Three ounces | $1,500 |
| April 23, 2025 | Three ounces | $2,000 |

In early May, the source of supply told the detective that Mr. Jose Gonzalez had seen news about drug arrests, was concerned, and had thrown away his phones. The source of supply could not reach him. On May 30th, the source of supply said he was back in contact with Mr. Jose Gonzalez, and that he had agreed to continue selling fentanyl. The detective and source of supply reached a deal for six ounces of fentanyl for $6,000. Detectives had already decided to arrest Mr. Jose Gonzalez when he arrived, and were prepared to search his residence.

But when the detective arrived at the meeting spot, the source of supply messaged that another person would be delivering the fentanyl. Indeed, instead of the defendant, Hugo Martinz-Luna arrived and sold a bag with fentanyl in exchange for $6,000. He was arrested, interviewed, and his phone searched.

Ultimately, detectives determined that Mr. Martinez-Luna was contacted at his place of work by Mr. Jose Gonzalez, who offered him $500 to deliver a package to the detective, and that the package was put in Mr. Martinez-Luna's car while he was at work. Mr. Jose Gonzalez provided Mr. Martinez-Luna with the location and vehicle description for the intended recipient. The seized package of fentanyl weighed a little more than 5 ounces.

### Guilty Plea & Guideline Computations

On April 8, 2026, Mr. Jose Gonzalez pleaded guilty to Counts 1, 2 and 3 of the Information, charging conspiracy to distribute 400 grams or more of fentanyl and two counts of distribution of 40 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vi) and 846, and 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi). The

government recommends the following guidelines calculations, which differ from those

set forth in the Presentence Report, as further discussed below:

| GUIDELINES | AMOUNT |
|---|---|
| Base offense level USSG § 2D1.1(c)(5) | 30 |
| Safety Valve USSG § 2D1.1(b)(18) | -2 |
| Zero-point offender USSG § 4C1.1(a) and (b) | -2 |
| Acceptance of Responsibility USSG 3E1.1 | -3 |
| **Total Offense Level** | 23 |

The Probation Office and the defense also recommend a 4-level mitigating role

reduction pursuant to USSG § 3B1.2(a), as informed by § 2D1.1(e)(2), because Mr. Jose

Gonzalez' primary function was that of a courier. The burden is on the defense to prove by

a preponderance of the evidence that he is entitled to a downward adjustment. *United*

*States v. Diaz*, 884 F.3d 911, 914 (9th Cir. 2018). Given Mr. Jose Gonzalez' solicitation

and offer of payment to have another take his place, the government submits that the

reduction should not be given in this case.

A reduction "is *generally warranted* if the defendant's primary function in the

offense was performing a low-level trafficking function." USSG § 2D1.1(e)(2)(B)

(emphasis added). Section 2D1.1(e)(2)(B)(i) lists a courier as an example of a person

whose primary function is "plainly among the lowest level of drug trafficking functions".

Application Note 3(C) to USSG § 3B1.2, Mitigating Role, sets forth a non-exhaustive list

of factors the Court should consider in determining whether the reduction should be given.

The decision to apply a reduction is "based on the totality of the circumstances and

involves a determination that is heavily dependent upon the facts of the particular case."

*Id*.

**Government's Sentencing Memorandum**                                           **Page 4**

The government agrees that Mr. Jose Gonzalez' primary function was to deliver fentanyl as directed by the source of supply. But he solicited Mr. Martinez-Luna to take his place delivering fentanyl and said he would pay him $500. A reduction being "generally warranted" leaves room for fact-based exceptions such as here. His recruitment of Mr. Martinez-Luna led to his arrest, federal prosecution, and to this Court imposing a 27-month prison sentence. Mr. Jose Gonzalez' conscious and deliberate decision to outsource his risk to another should remove him from the standard case in which a mitigating role is "generally warranted".

**Argument**

Fentanyl kills people, and Mr. Jose Gonzalez repeatedly delivered fentanyl in Douglas County, Oregon. And he did this after illegally re-entering the United States following his 2008 conviction for Illegal Entry and subsequent removal. Mr. Jose Gonzalez shows a lack of respect for the law and a willingness to endanger others for his own gain.

While he was not the source of supply or a mid-level organizer, his role was clearly important. In fact, when the source of supply was unable to reach Mr. Jose Gonzalez, he stopped selling fentanyl to the undercover detective. Mr. Jose Gonzlez' fear of being arrested was legitimate. He never should have sold fentanyl in the first place, and then when he became afraid he should have stopped completely. Instead, he brought in a previously uninvolved person.

Hugo Martinez-Luna is responsible for his own actions, but Mr. Jose Gonzalez bears responsibility for soliciting him into the drug conspiracy and for his deliberate

choice to try and outsource his risk to another. In doing so, he not only distributed fentanyl into the community, he essentially distributed the underlying criminal conduct itself.

Given his repeated distribution of a deadly drug and his solicitation of another, the government recommends a prison sentence of 46 months. And if the Court grants a mitigating role reduction, given the totality of his conduct, the government recommends an upward variance pursuant to 18 U.S.C. § 3553(a) to a sentence of 46 months. Such a sentence is warranted, and is sufficient but not greater than necessary.

### Conclusion

The government respectfully recommends a sentence of 46 months' imprisonment, three years of supervised release, and a $100 fee assessment.

Dated: July 1, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

s/ *Jeffrey S. Sweet*
JEFFREY S. SWEET, OSB #994183
Assistant United States Attorney